THOMAS A. KELLY & another, administrators *de bonis non* with the will annexed, *vs.* JAMES M. MORRISON.

FRANK F. ROGERS, JR., & others *vs.* SAME.

Suffolk. November 20, 1918. — January 3, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Name. Partnership. Equity Jurisdiction,* To enjoin use of name of deceased partner, Laches. *Limitations, Statute of. Executor and Administrator.*

St. 1853, c. 156, now in substance R. L. c. 72, § 5, which provides that, "A person who carries on business in this Commonwealth shall not assume or continue to use in his business the name of a person formerly connected with him in partnership or the name of any other person, either alone or in connection with his own or with any other name or designation, without the consent in writing of such person or of his legal representatives," gives a right to the executor or administrator of the estate of a deceased partner which before the passage of the statute was unknown to the common law or in equity, and under the next section of this statute the executor or administrator of the estate of a deceased partner can maintain a suit in equity to enjoin a surviving partner from continuing to use the name of the testator or intestate in his business.

Such a suit in equity may be brought at any time while such use of the testator's or intestate's name continues, and while such use continues neither the statute of limitations nor laches is applicable as a defence to such a suit. Following *Bowman* v. *Floyd,* 3 Allen, 76.

By the statute named above the right to maintain a suit in equity to enjoin the continuance of the use of the name of a deceased partner is given only to "his legal representatives," and former partners of a firm that used the name of the deceased after his death cannot maintain such a suit.

BILL IN EQUITY, filed in the Superior Court on May 6, 1918, by the administrators *de bonis non* with the will annexed of the estate of Thomas Kelly, late of Boston, against one who was a partner of the plaintiff's testator at the time of his death, praying that the defendant be restrained by injunction from using in his business the name of the plaintiff's testator, and for an accounting; and another

BILL IN EQUITY, filed in the Superior Court on the same day, by persons who, after the death of Thomas Kelly, were with the defendant the members of a partnership doing business under the firm name of Thomas Kelly and Company, praying for an injunction restraining the defendant from using the firm name of Thomas Kelly and Company, and for an accounting.

The cases were heard together by *Fox*, J., upon an agreed statement of facts relating to both of them, which contained the facts that are stated in the opinion. The judge in each of the cases, with the consent of the parties, reported the case and all questions of law therein for determination by this court.

St. 1853, c. 156, was as follows:

"Sect. 1. No person carrying on business in this Commonwealth, shall assume or continue to use in his business the name or names of any person or persons formerly connected with him in partnership, or of any other person or persons, either alone or in connection with his own or any other name or designation, without the consent of such person or persons, or of his or their legal representatives, in writing.

"Sect. 2. The Supreme Judicial Court shall have power in equity to restrain by injunction the use of any person's name in violation of this act."

R. L. c. 72, § 5, is quoted in full in the opinion.

Section 6 of that statute is as follows: "The Supreme Judicial Court or the Superior Court shall have jurisdiction in equity to restrain the use of names or labels in violation of the provisions of this chapter."

*J. F. Sullivan*, for the plaintiffs.

*G. R. Nutter*, (*G. C. Coleman* with him,) for the defendant.

PIERCE, J. These cases were argued together and may be disposed of by a single opinion. In each case the plaintiffs seek to enjoin the defendant from the use of the name Thomas Kelly in connection with his business in the cities of Boston, New York and Chicago. The cases are before this court on report.

The agreed facts applicable to both cases are, in substance, as follows: On December 1, 1892, the defendant Morrison became a partner with Thomas Kelly and one Maguire, under the name of Thomas Kelly and Company. Kelly died in 1893. Maguire and Morrison continued the business under the same firm name until the death of Maguire in 1895. On December 1, 1895, Morrison formed a new partnership with other partners, and continued the business with various partners, and finally with the plaintiffs Hennessey, Rogers and Jenkins under the same firm name of Thomas Kelly and Company until the expiration of the last partnership on November 30, 1917. On December 1, 1917, a bill

was filed by Morrison against the other partners, a receiver was appointed, and all the right, title and interest of the defendants in and to the personal property of the partnership were transferred to the receiver, who conveyed the same to Morrison. After the conveyance by the receiver, Morrison sent out to all customers whose names appeared on the books of the old firm of Thomas Kelly and Company and to the trade generally a statement, dated May 1, 1918, which in substance read: "The late firm of Thomas Kelly & Co. has been dissolved. . I have acquired the assets, business and good will, and am continuing the business . . . at the same address, and under the same name of Thomas Kelly & Co." On May 1, 1918, the plaintiffs Rogers, Hennessey and Jenkins sent out to all the old customers of Thomas Kelly and Company and to the trade generally, a notice of the dissolution of the firm of Thomas Kelly and Company and that they had "formed a new partnership under the name of Rogers, Hennessey & Jenkins for the carrying on of the same line of business."

"The executor of the will of Thomas Kelly was his partner, Maguire, and after the death of Maguire, Thomas A. Kelly and Thomas J. Kelly, the plaintiffs, were appointed administrators *de bonis non* in 1895. The right to the use of the name Thomas Kelly does not appear as an asset on any inventory of the estate of Thomas Kelly, nor is it included in the first and final account of the administrators *de bonis non,* which was filed in 1916, duly assented to by all persons interested therein. The administrators *de bonis non* have at all times known that, after the death of Thomas Kelly, Morrison continued the business and has continued it under the same firm name with different partners since December, 1895. During that period, Morrison has sent out circulars and price lists regularly to the trade, and has advertised somewhat in trade papers, and the sales of the business have almost doubled from 1895 to 1917. The name is of value, and its value has increased since 1895. Neither of the administrators has ever been engaged in a similar business, although Thomas A. Kelly was employed during the year 1896 by the firm which Morrison formed to succeed the old firm in which Thomas Kelly was a partner, and, since the sale of the business by the receiver to Morrison, Thomas A. Kelly has been employed by the firm of Hennessey, Rogers and Jenkins. The offices of the firm of

Thomas Kelly and Company since 1895 were in Chauncy Street, Boston, at the corner of Exeter Place, until the building burned in 1917, and after that destruction by fire were moved to the opposite corner, where Morrison is now conducting the business. No notice was ever given by the administrators *de bonis non* to Morrison to cease using the name Thomas Kelly until after April 12, 1918, after the conveyance of the business by the receiver to Morrison."

The right claimed by the plaintiffs to have enjoined the use of the name of their testator, is a right unknown to the common law and to courts of equity. As a remedial right it was first conferred upon a person and his legal representatives by St. 1853, c. 156, now R. L. c. 72, § 5. That statute reads: "A person who carries on business in this Commonwealth shall not assume or continue to use in his business the name of a person formerly connected with him in partnership or the name of any other person, either alone or in connection with his own or with any other name or designation, without the consent in writing of such person or of his legal representatives."

It is the contention of the defendant that the statute intended to provide for two classes of cases, — the first, where there is an assumption of a name; the second, where there is a continuance of the use of a name by a person or persons who once had the right to use it in connection with the owner of it. And it is argued that the intent of the statute is expressed by the simple word "use" without the phrase "assume or continue to use." Should this construction of the legislative intent be adopted it is plain the phrase "assume or continue to use" could not be interpreted to mean "shall not assume and continue to use," as it manifestly was interpreted to mean in *Bowman* v. *Floyd*, 3 Allen, 76, 80. The Legislature has re-enacted the statute of 1853 at least twice since the decision in *Bowman* v. *Floyd*, without substantial change, and the judicial construction then put upon it is now a part of the statute, if the intent thereof was ever a question of doubt. *Nichols* v. *Vaughan*, 217 Mass. 548, 551.

*Bowman* v. *Floyd* decided that "the statute forbids not only the assumption but the continued use of the name of another person without consent first duly obtained." It also is authority for the proposition that that person or his legal representatives "must

necessarily have the right at any time at their pleasure to avail themselves of the remedy given them [him] by the statute to cause the use to be restrained by injunction." The defendant suggests that perhaps *Bowman* v. *Floyd* goes no further than to decide under the plea of the statute of limitations and the facts which sustained that plea, that the Legislature "did not intend mere lapse of time without else to bar the right of the representatives to enjoin the use of the name," and that there is nothing in that decision "to prevent a court of equity from considering the equitable doctrines of estoppel and laches." An examination of the original papers in that case shows the question of the effect of an acquiescence for almost eight years upon the plaintiffs' right to maintain the bill was argued to the court, as well as the statute of limitations. If under the statute the plaintiffs "must necessarily have the right at any time at their pleasure to avail themselves of the remedy," they cannot be said to have slept upon their rights because they take advantage of the full remedy which the law allows. In a word, the wrong of the defendant consists of a series of acts, and is not a single act with a continuance. It is not argued and there is nothing in the agreed facts to warrant a defence that the plaintiffs, by acquiescence, have abandoned their right to the intervention of equity, so far as the act is in progress and lies in the future. *Menendez* v. *Holt*, 128 U. S. 514. The doctrine of estoppel cannot be evoked as a defence; the plaintiffs have not stood by and encouraged the defendant to act upon the belief that they had no right or had abandoned it. In legal contemplation the defendant knew the plaintiffs could avail themselves of the remedy at any time.

The plaintiffs in the second case are not persons who are entitled to the right and remedy conferred by the statute. *Lodge* v. *Weld*, 139 Mass. 499.

It follows that in the second case the bill should be dismissed with costs; and in the first case a decree of injunction should issue restraining the defendant from the use of the name Thomas Kelly in connection with his business, except as it shall be used to indicate his succession to the business of Thomas Kelly and Company.

*Decree accordingly.*